## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| NOELLE M., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil No. 3:24-cv-1196(RAR) |
| | : |
| FRANK BISIGNANO[1], | : |
| Commissioner of Social | : |
| Security, | : |
| | : |
| Defendant | : |

## RULING ON PLAINTIFF'S MOTION TO REVERSE AND/OR REMAND AND DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER

Noelle Machia ("Plaintiff") appeals the final decision of the Commissioner of Social Security ("the Commissioner") pursuant to 42 U.S.C. § 405 (g). The Commissioner denied plaintiff's application for Social Security Disability Benefits in a decision dated September 21, 2023. Plaintiff timely appealed to this Court. Currently pending are plaintiff's motion for an order reversing or remanding her case for a hearing (Dkt. #18) and defendant's motion to affirm the decision of the Commissioner (Dkt. #23). For the following reasons, plaintiff's

---

[1] Frank Bisignano has been sworn in as Commissioner of Social Security and should be substituted for Martin O'Malley pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

motion to reverse, or in the alternative, remand, is DENIED and the Commissioner's motion to affirm is GRANTED.

## Standard

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C § 405(g), is performing an appellate function." Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981).[2] "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the court may not make a de novo determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. Id.; Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching his conclusion, and whether the decision is supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987). Therefore, absent legal error, this court may not set aside the decision of the Commissioner if it is supported by substantial evidence. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even

---

[2] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

where there may also be substantial evidence to support the
plaintiff's contrary position. <u>Schauer v. Schweiker</u>, 675 F.2d
55, 57 (2d Cir. 1982).

The Second Circuit Court of Appeals has defined substantial
evidence as "'such relevant evidence as a reasonable mind might
accept as adequate to support a conclusion.'" <u>Williams <i>ex rel.</i></u>
<u>Williams v. Bowen</u>, 859 F.2d 255, 258 (2d Cir. 1988) (quoting
<u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)). Substantial
evidence must be "more than a scintilla or touch of proof here
and there in the record." <u>Williams</u>, 859 F.2d at 258.

The Social Security Act ("SSA") provides that benefits are
payable to individuals who have a disability. 42 U.S.C. §
423(a)(1). "The term 'disability' means . . . [an] inability to
engage in any substantial gainful activity by reason of any
medically determinable physical or mental impairment . . . ." 42
U.S.C. § 423(d)(1). To determine whether an individual is
disabled within the meaning of the SSA, the Administrative Law
Judge ("ALJ") must follow a five-step evaluation process as
promulgated by the Commissioner.[3]

---

[3] The five steps are as follows: (1) the Commissioner considers whether the
claimant is currently engaged in substantial gainful activity; (2) if not,
the Commissioner considers whether the claimant has a "severe impairment"
which limits his or her mental or physical ability to do basic work
activities; (3) if the claimant has a "severe impairment," the Commissioner
must ask whether, based solely on the medical evidence, the claimant has an
impairment listed in Appendix 1 of the regulations. If the claimant has one
of these enumerated impairments, the Commissioner will automatically consider
him or her disabled, without considering vocational factors such as age,
education, and work experience; (4) if the impairment is not "listed" in the

To be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). "[W]ork which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." Id.[4]

## Procedural History

Plaintiff initially filed for disability insurance benefits by way of a Title II application, citing alleged disability since November 1, 2021. Plaintiff's claim was initially denied on September 9, 2022, and upon reconsideration on February 16, 2023. Plaintiff subsequently filed a written request for a hearing which was received on February 22, 2023. (20 CFR 404.929 *et seq.*). On August 3, 2023, a telephonic conference was held by Administrative Law Judge Alexander Borré ("ALJ"). (R. 1434.)[5] In

---

regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps. 20 C.F.R. §416.920(a)(4)(i)-(v).

[4] The determination of whether such work exists in the national economy is made without regard to (1) "whether such work exists in the immediate area in which [the claimant] lives;" (2) "whether a specific job vacancy exists for [the claimant];" or (3) "whether [the claimant] would be hired if he applied for work." Id.

[5] The Court cites pages within the administrative record as "R. ___."

this conference, plaintiff alleged her ability to work was limited by constant pain and headaches, which she attributed to battles with fibromyalgia and arthritis. Following the hearing, the ALJ issued a written decision denying plaintiff's application on September 21, 2023. (R. 1431.) Plaintiff thereafter sought review by the Appeals Council, which was denied on May 14, 2024. (R. 1.) Plaintiff then filed this action on July 14, 2024, seeking judicial review.

## The ALJ's Decision

After applying the five-step evaluation process, the ALJ concluded that the plaintiff was not disabled within the meaning of the Social Security Act from her alleged onset date of November 1, 2021, through the date of Plaintiff's date last insured ("DLI"), September 30, 2022. (R. 1435). At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity between her alleged onset date of November 1, 2021, and the DLI. (R. 1437.)

At step two, the ALJ found that plaintiff had the following severe impairments: fibromyalgia, degenerative disc disease of the lumbar spine, bipolar disorder, and obesity, and the following non-severe impairments: Factor V Leiden clotting disorder, migraine headaches, and asthma. (R. 1437.)

At step three, the ALJ determined that plaintiff's severe impairments did not meet or medically equal the severity of a

listed impairment in 20 C.F.R. Part 404, Subpt. P, App. 1
(20C.F.R. 404.1520(d), 404.1525 and 404.1526). (R. 1438.) First,
the ALJ determined plaintiff's spinal impairment did not meet
the criteria of Listing 1.15, which pertains to disorders of the
skeletal spine resulting in compromise of a nerve root(s). Id.
The ALJ notes that "the medical record does not document neuro-
anatomic distribution of symptoms consistent with compromise of
the affected nerve root(s) and radicular distribution of
neurological signs present during physical examination or on a
diagnostic test and the requisite impairment-related physical
limitation of musculoskeletal functioning." Id. Next, the ALJ
determined that plaintiff's lumbar condition did not meet the
requirements of Listing 1.16, which covers disability caused by
Lumbar spinal stenosis in compromise of the cauda equina. As to
the denial of Listing 1.16, the ALJ states that "the medical
[records do] not document symptoms of neurological compromise
and non-radicular neurological signs during physical examination
or diagnostic testing, findings on imaging or in an operative
report, and the requisite evidence of impairment-related
physical limitation of musculoskeletal functioning." Id. Lastly,
the ALJ determined that the severity of plaintiff's mental
impairments did not meet listings 12.04 or 12.06. To satisfy
listings 12.04 or 12.06, "paragraph B" criteria must be
satisfied, meaning that one extreme limitation or two marked

6

limitations in a broad area of functioning are found.[6] Since the Plaintiff's mental impairments did not meet at least two marked limitations or one extreme limitation her condition does not meet the listings 12.04 or 12.06.[7] (R. 1438-39.)

At step four, the ALJ found plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b). (R. 1440.)  Except, plaintiff

> could not climb ladders, ropes, or scaffolds and was restricted from all exposure to workplace hazards such as unprotected heights and open, moving machinery.  She could occasionally climb ramps and stairs, stoop, kneel, crouch and crawl.  She could frequently balance.  She could understand, remember, and carry out simple instruction in an environment with occasional interaction with the public, occasional simple changes, moderate noise, and no lights brighter than standard overhead fluorescent light.  She could frequently finger and handle.

Id.

Lastly, at step five, the ALJ concluded that plaintiff was unable to perform past relevant work under 20 CFR 404.1565. Plaintiff had past relevant work as a personnel clerk and a wedding consultant. The vocational expert ("VE") at the

---

[6] An extreme limitation is the inability to function independently, appropriately, or effectively, on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, on a sustained basis.

[7] The ALJ also considered whether "paragraph C" criteria was satisfied. The ALJ found that Plaintiff did not have a medically documented "serious and persistent" medical disorder with evidence of both: "mental treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminishes the symptoms and signs of the mental disorder; and the marginal adjustment, or minimal capacity to adapt to changes in the environment or to demands not already part of daily life. (R. 1439).

administrative hearing determined that both past relevant professions were "precluded by her residual functional capacity." (R. 1445.)  However, the VE found that plaintiff could perform the occupations of information clerk, office clerk, and product inspector. (R. 1446.)

## Discussion

Plaintiff alleges that the ALJ erred in a number of ways in this case. First, plaintiff argues that the ALJ did not properly evaluate plaintiff's migraine headaches under SSR 19-4. Plaintiff alleges that a proper evaluation would have shown that impairment to be severe and/or equal to a listed impairment. (Dkt. #18-1 at 2-12.)  Second, plaintiff argues that the ALJ's RFC determination is devoid of substantial evidence. (Dkt. #18-1 at 12-23.)  Finally, plaintiff argues that the ALJ did not properly apply SSR 12-2P to plaintiff's fibromyalgia diagnosis. (Dkt. #18-1 at 23-34.) The Commissioner responds to the claims of error by generally arguing that all the ALJ's determinations are supported by substantial evidence. Based on the following, plaintiff's motion to reverse and/or remand is DENIED and the defendant's motion to affirm is GRANTED.

## I.    The ALJ's Evaluation of Plaintiff's Migraine Headaches as Non-Severe

Plaintiff asserts the ALJ improperly assessed her migraine headaches. In the ALJ's decision it was determined that

plaintiff's migraine headaches were a non-severe impairment at
step two of the sequential evaluation process. (R. 1437.)
Plaintiff asserts, essentially, that this finding is in error
and impacts the eventual determination of plaintiff's RFC.
Specifically, plaintiff alleges that the ALJ did not properly
use SSR 19-4p to assess plaintiff's migraines and thus determine
if it satisfied a listings impairment. (Dkt. 18-1 at 4-12.)

The Commissioner responds to this argument by asserting
that the ALJ did not err in finding plaintiff's migraines to be
non-severe.  (Dkt. #23-1 at 9-12.)  The Commissioner notes that
the ALJ's determination is supported by the findings of the
state agency medical consultants who opined that the condition
was not severe and which the ALJ noted to be partially
persuasive.  (R. 1444.)  Furthermore, the Commissioner asserts
that there was no error in the creation of the RFC based on the
evidence available to the ALJ or in the application of SSR 19-4
or the listing 11.02 as alleged by plaintiff.

Upon review the Court has determined that the ALJ did not
err in finding that plaintiff's migraines are a non-severe
impairment at step 2, and in so finding, the arguments related
to listing 11.02 are unavailing.

"A claimant has the burden of establishing that she has a
'severe impairment,' which is 'any impairment or combination of
impairments which significantly limits [her] physical or mental

ability to do basic work.'"  Woodmancy v. Colvin, 577 Fed. Appx. 72, 74 (2d Cir. 2014)(quoting 20 C.F.R. § 416.920(c)) (alterations in original).  A mere diagnosis of a disease or impairment is insufficient, the evidence must demonstrate that such impairment is severe.  See Rivers v. Astrue, 280 Fed. Appx. 20, 22 (2d Cir. 2008).  "Accordingly, a claimant cannot satisfy his light burden to show the severity of an impairment by simply pointing to complaints of pain, a diagnosis, or treatment." Duane N. v. Comm'r of Soc. Sec., No. 3:22-CV-65 (SVN), 2023 WL 2365991, at *4 (D. Conn. March 6, 2023)(citing Howard v. Comm'r of Soc. Sec., 203 F. Supp. 3d 282, 296 (W.D.N.Y. 2016)).

A claimant seeking social security benefits must bear the burden of showing that she has a medically severe impairment or combination of impairments.  See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).  "The severity regulation requires the claimant to show that [s]he has an 'impairment or combination of impairments which significantly limits' 'the abilities and aptitudes necessary to do most jobs.'"  Id. at 146 (quoting 20 C.F.R. §§ 404.1520(c), 404.1521(b)).  It is the plaintiff's burden to provide "medical evidence which demonstrates the severity of her condition."  Merancy v. Astrue, No. 3:10-cv-1982(WIG), 2012 WL 3727262, at *7 (D. Conn. May 3, 2012). Furthermore, Plaintiff must establish disability between her

alleged onset date and her date of last insured. <u>Monette v. Colvin</u>, 654 Fed. Appx. 516, 517 n.1 (2d Cir. 2016).

"A lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits." <u>Eusepi v. Colvin</u>, 595 Fed. Appx. 7, 8 (2d Cir. 2014) (citing <u>Talavera v. Astrue</u>, 697 F.3d 145, 153 (2d Cir. 2012)).

Additionally, where an ALJ errs in determining an impairment is nonsevere, the error is harmless when the ALJ finds other severe impairments and continues with the analysis. <u>See</u> <u>O'Connell v. Colvin</u>, 558 Fed. Appx. 63, 65 (2d Cir. 2014); <u>Reices-Colon v. Astrue</u>, 523 Fed. Appx. 796, 798 (2d Cir. 2013); <u>Stanton v. Astrue</u>, 370 Fed. Appx. 231, 233 n.1 (2d Cir. 2010). "At step two, if the ALJ finds an impairment is severe, 'the question whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence.'" <u>Lumpkin v. Saul</u>, No. 3:19-CV-01159 (WIG), 2020 WL 897305, at *3 (D. Conn. Feb. 25, 2020)(citing <u>Pompa v. Comm'r of Soc. Sec.</u>, 73 Fed. Appx. 801, 803 (6th Cir. 2003).) *See also*, <u>Duane N. v. Comm'r of Soc. Sec.</u>, No. 3:22-CV-65 (SVN), 2023 WL 2365991, at *6 (D. Conn. March 6, 2023)(collecting cases)(articulating that "courts in this circuit have found a step two error harmless when the ALJ finds other severe impairments, proceeds through

the remaining steps of the disability analysis, and considers the impact of the non-severe impairment in those steps, particularly when calculating the claimant's RFC.").

In this case, at step two, plaintiff bears the burden of providing evidence of the severity of her migraines. Plaintiff has argued in her brief that she has done so and cites to a number of pages in the record and asserts that the ALJ did not properly consider them in coordination with SSR 19-4 and listing 11.02. The Court does not agree. While the record is clear, and many providers note, that plaintiff had a history of migraines dating back many years, there simply is insufficient evidence of the migraines being as severe as plaintiff has alleged.

In support of the severity argument, plaintiff cites a number of records both during and after the DLI. (Dkt. #18-1 at 9-10.) One of those citations is to a single page from what is described as an emergency room visit, which plaintiff alleges is for migraines. (Dkt. 18-1 at 9.) However, upon review, the document from November 23, 2021, indicates that the primary care visit was for a sinus infection which is noted to be, among other things, causing pain "so bad triggering migraine."[8] (R.

---

[8] The Court notes that plaintiff references this record again, citing to an alternative page of the record containing the same document at R. 1993. (Dkt. #18-1 at 11.) In so doing, plaintiff argues that the notation indicating no headaches in the review of symptoms is "obviously an inaccurate default electronic template that was not edited." Id. While this is

2230.)  Indeed, the record continues on to indicate that there was "no headache" during a review of symptoms and plaintiff was discharged with a finding of "Acute bacterial rhinosinusitis." (R. 2230-31.)  Additional records that plaintiff cites are from Dr. Mitchell Garden who was treating plaintiff's leg and back pain in October and November of 2021. (Dkt. #18-1 at 9.) Plaintiff alleges that these records provide documentation of headaches.  While one record does note "complaint of headaches admits," (r. 1917) during a review of symptoms, the other records include a document explaining SSA form 827 in relation to an MRI record (r. 1946), an intake form that does not have any reference to headaches or migraines in it and is continued on to a page where the plaintiff "denies headache." (R. 1949-50).  A final record of Dr. Garden that plaintiff cites is an apparently self-reported intake sheet checking off a box for migraines. (R. 1955.)

Additional records cited by plaintiff during the relevant period continue to note a reported history of migraines, but do not test for or mention treatment related to the condition.  For instance, plaintiff cites records from Dr. Hulinska. (Dkt. #18-1

---

possible, the Court could also read the relevant record to mean that the sinus pain had caused pain so bad it had triggered a migraine, but that there is no longer a complaint of headache pain.  Alternatively, perhaps the pain was so bad it was concerning plaintiff that it would trigger a migraine.  In any event, the Court does not struggle to find alternative readings beyond plaintiff's explanation.

at 9.)  The records that are cited state that "[a]pparently she
has a history of migraines managed by her neurologist." (R. 1934
and 1939.)  While this note is printed twice by Dr. Hulinska, it
appears to be a report from plaintiff and not a finding related
to the doctor's treatment of plaintiff's joint pain, which was
the reason for her visits. (R. 1926 and 1936.)

These citations and others made by plaintiff are for visits
and treatment mostly related to other ailments and do not show
frequent and explicit treatment for or prognosis of plaintiff's
migraines.  As with the previously discussed documents many of
the other records cited by plaintiff contain a note citing a
history of migraines while documenting treatment for other
conditions. For instance, APRN Kaneen White, notes an undated
diagnosis for migraines, which plaintiff cites as diagnosis and
treatment for migraines. (Dkt. 18-1 at 9 and R. 946.) However,
while conducting a sleep evaluation, APRN White only mentioned a
past medical history of migraines and later included migraines
in a list of conditions that plaintiff has been diagnosed with
over time. (R. 942-946.) The record also includes a passing
mention under assessment & plan.[9]  Further, as mentioned by the
Commissioner, many of the cited records postdate the plaintiff's
DLI by months or in some cases years.  (Dkt. #23-1 at 11.)

---

[9] The Court will not belabor the point, but many of the citations to the
record do not stand for the proposition for which they are used.

In any event, the ALJ does mention plaintiff's migraines in his decision.  The ALJ finds that plaintiff has a history of migraines dating to childhood.  The ALJ also discusses the presentation of previous migraine episodes and notes that there was treatment with Imitrex. (R. 1437.)  Indeed, based in part on the partially persuasive state agency consultants, the ALJ includes limitations in the RFC related to limitations on noise and light as potential triggers for migraines. (R. 1437 and 1443.)  As noted earlier, "A lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits."  <u>Eusepi v. Colvin</u>, 595 Fed. Appx. 7, 8 (2d Cir. 2014) (citing <u>Talavera v. Astrue</u>, 697 F.3d 145, 153 (2d Cir. 2012)).  Keeping this dictate in mind, the Court finds that the ALJ did not err in finding that the plaintiff's migraines were not a severe condition.

The plaintiff further argues that the ALJ erred in not applying SSR 19-4, which provides guidance on the evaluation of cases involving primary headache disorders. <u>Soc. Sec. Ruling, Ssr 19-4p; Titles II & Xvi: Evaluating Cases Involving Primary Headache Disorders</u>, SSR 19-4P (Aug. 26, 2019).  "Migraines fall into the category of 'primary headache disorders' according to SSA regulations. There is no Listed Impairment for migraines,

but it is settled that they may 'medically equal a listing' in particular cases." Prescott v. O'Malley, No. 21-CV-441(EK), 2024 WL 1174400, at *3 (E.D.N.Y. March 19. 2024.)  Rather, under SSR 19-4, and ALJ is told to evaluate headaches and migraines by way of analogy under the listing for epilepsy, 11.02. *See* SSR 19-4 at *7.

Plaintiff alleges that the ALJ's failure to evaluate her migraines under 19-4 and 11.02 warrants remand.  The Court does not agree.  The main cases plaintiff cites to support the proposition that 19-4 and 11.02 must be evaluated by the ALJ are Prescott, 2024 WL 1174400 and Tamra A.W. v. Kijakazi, No. 22-CV-1099-JAR, 2023 WL 2784854 (D. Kan. April 5, 2023.).  However, both of those cases are distinguishable because the ALJ in both cases found the plaintiff to suffer from migraines that were deemed to be a severe medical impairment at step two. Therefore, at step three of the sequential evaluation process in these cases the ALJ went on to determine if the plaintiff's severe impairments met or exceeded the listing as dictated by 19-4 under listing 11.02.

As indicated above, the ALJ in this case, in a determination supported by substantial evidence, found that the plaintiff's migraines were not a severe impairment.  This finding was at least in part on the lack of objective medical evidence from the period at issue regarding treatment for

16

headaches.  Further, to meet the listing for 11.02[10], plaintiff would need to show she suffers from "migraines 'occurring at least once a week for at least three consecutive months.' In addition, [plaintiff] must demonstrate that she has migraines 'occurring at least once every 2 weeks for at least three consecutive months despite adherence to prescribed treatment, and marked limitation in one area of functioning.'"  Tamra A.W. v. Kijakazi, No. 22-CV-1099-JAR, 2023 WL 2784854, at *5 (D. Kan. April 5, 2023) (quoting Soc. Sec. Ruling, Ssr 19-4p; Titles II & Xvi: Evaluating Cases Involving Primary Headache Disorders, SSR 19-4P (Aug. 26, 2019)).  Plaintiff has not pointed to sufficient medical evidence during the relevant time period to show treatment for migraines occurring with that frequency.

As found previously, the Court does not find error in the ALJ's determination regarding the severity of plaintiff's migraines.  In addition, even if there was error, as mentioned "[a]t step two, if the ALJ finds an impairment is severe, 'the question whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence.'" Lumpkin v. Saul, No. 3:19-CV-01159 (WIG), 2020 WL 897305, at *3 (D. Conn. Feb. 25, 2020)(citing Pompa v. Comm'r of Soc. Sec., 73 Fed. Appx. 801, 803 (6th Cir. 2003).)  See also, Duane N. v.

---

[10] In reading and analyzing 11.02 the Court replaces the necessary frequency of seizures with migraines or headaches, as it appears SSR 19-4 would dictate.

Comm'r of Soc. Sec., No. 3:22-CV-65 (SVN), 2023 WL 2365991, at
*6 (D. Conn. March 6, 2023)(collecting cases)(articulating that
"courts in this circuit have found a step two error harmless
when the ALJ finds other severe impairments, proceeds through
the remaining steps of the disability analysis, and considers
the impact of the non-severe impairment in those steps,
particularly when calculating the claimant's RFC.").  While
plaintiff does not agree with the ALJ's RFC determination, there
is no doubt that the ALJ fulfilled his obligation to consider
both severe and non-severe medical conditions during its
formation.

## II.   The ALJ's RFC Determination is Supported by Substantial Evidence

Plaintiff's second argument, related to the ALJ's formation
of plaintiff's RFC is closely related to the previous discussion
of plaintiff's migraines.  Plaintiff asserts that in finding her
headaches to be non severe, the ALJ did not include any
absenteeism restriction in the formation of the RFC.  Plaintiff
asserts that this limitation is the most prominent to associate
with migraines, as they cause a disruption in the ability of a
party to reliability and consistently be present at work. (Dkt.
#18-1 at 12-13.)  At its core, plaintiff's argument asserts that
in failing to properly evaluate the medical opinion of Dr. Wong,

and his assessed absenteeism, the ALJ erred in formulating the RFC.

The Commissioner disagrees and asserts that the ALJ's finding that Dr. Wong's opinion was unpersuasive is supported by substantial evidence and thus the RFC is properly formulated. Further, the Commissioner notes that the ALJ incorporated restrictions in the RFC to reflect common migraine triggers, even though the migraines were not a severe impairment. (Dkt. #23-1 at 10-12.)

When an individual's impairment does not meet or equal a listed impairment, the ALJ will "make a finding [of the individual's] residual functional capacity based on all the relevant medical and other evidence in [the] case record." 20 C.F.R. § 404.1520(e). An individual's RFC is the most an individual can still do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). Plaintiff has the burden of establishing a diminished RFC. See Butts v. Barnhart, 388 F.3d 377, 383 (2d Cir. 2004).

In formulating an appropriate RFC, an ALJ is required to review and evaluate the medical records and opinions. The regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the plaintiff's] medical

sources." 20 C.F.R. § 416.1920c(a). The ALJ will consider any medical opinions according to certain factors, including: (1) whether objective medical evidence supports and is consistent with the opinion; (2) the relationship between the medical source and claimant; (3) the medical source's specialty; and (4) other factors that "support or contradict a medical opinion[.]" Id. §§ 404.1520c(c), 416.920c(c). The ALJ must explain how he considered the "supportability" and "consistency" factors in the evaluation, but the ALJ need not explain how he considered the secondary factors unless the ALJ finds that two or more medical opinions regarding the same issue are equally supported and consistent with the record but not identical. 20 C.F.R. § 404.1520c(b), 416.920.

For the "supportability" factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative finding(s), the more persuasive the medical opinions or prior administrative finding(s) will be." Id. §§ 404.1520c(c)(1), 416.920c(c)(1). For the "consistency" factor, "[t]he more consistent a medical opinion(s) or prior administrative finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative finding(s) will be." Id. §§ 404.1520c(c)(2), 416.920c(c)(2).

In the event that the court does not find that the RFC determination was subject to a legal error, the issue will become one of substantial evidence.  "[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, [the court] must decide whether substantial evidence supports the ALJ's decision." Bonet v. Colvin, 523 Fed. Appx. 58, 59 (2d Cir. 2013)(summary order). Analogously, "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002).

It is well established that "an ALJ is not required to discuss every shred of evidence in the record in reaching a conclusion — rather, the ALJ must articulate how the disability determination is supported by substantial evidence, and provide an explanation that allows for meaningful review on appeal." Vanessa N. v. Comm'r of Soc. Sec., No. 1:23-CV-00913 EAW, 2024 WL 4131242, at *5 (W.D.N.Y. Sept. 9, 2024)(citing Brault v. Comm'r of Soc. Sec., 683 F.3d 444, 448 (2d Cir. 2012)).

Here, in formulating the RFC the ALJ noted the existence of Dr. Wong's medical opinion.  However, the ALJ found that it was unpersuasive. (R. 1444.)  While the Court notes that the ALJ did not spend a significant amount of time analyzing the opinion of Dr. Wong, the analysis is still sufficient.  The ALJ noted that Dr. Wong provided a medical opinion in May of 2023.  (R. 1444.)

It was further noted that this submission was made after the DLI. (R. 1444.)  The Court additionally notes that the opinion form indicates that all treatment provided by Dr. Wong appears to have initiated five months after the DLI. (R. 2251.)  The ALJ additionally notes that the treatment provided by Dr. Wong was not for Fibromyalgia, which the form asks providers specifically to assess.  Rather, the ALJ states that Dr. Wong was treating for other conditions and evaluating plaintiff for multiple sclerosis and recommended some testing.  (R. 1444.)  Finally, it was highlighted that the findings of Dr. Wong were not consistent with those of a physical therapy intake done during the same month. (R. 1445.)  The ALJ asserts that the findings in Dr. Wong's opinion "appear to be based on plaintiff's subjective reports and are not consistent with her reported activities of daily living, including caring for two young children." (R. 1445.)

Plaintiff asserts that the opinion of Dr. Wong highlights frequent severe migraines since prior to 2021 and opined that plaintiff would be absent from work three days per month.  (Dkt. #18-1 at 13.)  Plaintiff seems to contend that if the ALJ assessed Dr. Wong's opinion as more persuasive that the absenteeism would preclude work based on the testimony of the vocational expert at the hearing.

A review of the document confirms that the form appears to
be guided towards providers that are treating a client for
fibromyalgia.  However, the Court does not believe that this
alone is a fundamental issue.  The Court reads the ALJ's
evaluation to indicate that there is a lack of supportability
and consistency to the opinion of Dr. Wong.  The Court agrees.

Again, while not a lengthy analysis, the Court can
understand how the ALJ reached his conclusion regarding Dr.
Wong's opinion.  The ALJ refers to Dr. Wong's assessed
limitations as extreme.  For instance, Dr. Wong indicates
missing work three days per month, can only sit 15-30 minutes,
can only be seated for four hours a day, would need four 15-
minute breaks in an eight-hour day, and would be off task 25% of
the day. (R. 2251-2257.) Further, in reaching these conclusions,
and as highlighted by the ALJ, Dr. Wong appears to have seen the
plaintiff on two occasions prior to issuing the medical opinion
at issue. (R. 2251.)  Both of the visits with plaintiff occurred
after the DLI, which was also noted by the ALJ. (R. 1444.)
Additionally, the records from the visits do not indicate that
Dr. Wong was treating or assessing plaintiff's headaches as
plaintiff stresses.  To the contrary, Dr. Wong was seen for a
complaint of numbing and tingling and a noted family history of
multiple sclerosis. (R. 2158.)  In discussing plaintiff's
medical history, Dr. Wong noted a diagnosis of migraines at age

11 and a loss of left eye vision that lasted two hours and was
noted to have no associated headache (abbreviated HA). (R.
2158.)  Dr. Wong further noted that plaintiff has headaches
around her left eye, and that Imitrex works well for this
condition. (R. 2152.) A further progress note mentioned that
perhaps the vision episode was a vascular event but did not
otherwise mention migraines. (R. 2164.) A nearly identical note
regarding migraine history also exists from the visit in April
of 2023. (R. 2178 & 2184.)

    Dr. Wong's findings do not indicate a lengthy treatment
history for headaches or the nature of any headache episodes.
Rather, it appears that Dr. Wong was provided a medical history
and included it when discussing plaintiff's medical history.  As
noted by the Commissioner, during the relevant period, there was
little treatment for headache episodes that were not comorbid
with other conditions or potentially related to plaintiff's
pregnancy during that time.  The ALJ noted that plaintiff had
migraines, and that they appeared based on the record to be
"infrequent prior to the date last insured." (R. 1437.) While
Dr. Wong's opinion notes headaches and absenteeism, the ALJ's
assessment of those records is sufficient and supported by
substantial evidence.

    A reviewing court does not "decide the facts anew, nor []
reweigh the facts, nor [] substitute its judgment for the

24

judgment of the ALJ. Rather, the decision of the ALJ must be affirmed if it is based upon substantial evidence even if the evidence would also support a decision for the plaintiff." Bellamy v. Apfel, 110 F. Supp. 2d 81, 87 (D. Conn. 2000). "Indeed, [t]he fact that [plaintiff] does not agree with [the ALJ's] findings, does not show that the ALJ failed to comply with the applicable standards." Gina C. v. Comm'r of Soc. Sec. Admin., No. 3:21CV00423(SALM), 2022 WL 167922, at *10 (D. Conn. Jan. 18, 2022).

The ALJ in this case formulated an RFC through an evaluation of the medical record and through utilization of the state agency consultants, who reviewed the medical evidence in this case. "It is also well settled that an ALJ is entitled to rely upon the opinions of the state agency's medical and psychological consultants, since they are qualified experts in the field of Social Security disability." Colvin v. Astrue, No. 09-CV-946S, 2011 WL 3047713, at *5 (W.D.N.Y. July 25, 2011).

### III. The ALJ's Evaluation of Plaintiff's Fibromyalgia

Plaintiff's final argument relates to the ALJ's evaluation of her fibromyalgia. (Dkt. #18-1 at 23-34.)  Plaintiff highlights the complex nature of fibromyalgia and the difficult process of diagnosis and treatment.  In light of this, plaintiff argues that the ALJ erred by failing to properly apply SSR 12-2p

which the SSA put forth to assist ALJs in reaching a determination of whether a claimant's fibromyalgia is a medically determinable impairment. Plaintiff's argument seems to focus on two things: (1) the ALJ's failure to specifically reference which of two standards he utilized under SSR 12-2p for evaluating the underlying symptoms of fibromyalgia and (2) the ALJ's conduct in allegedly requiring objective evidence to substantiate plaintiff's fibromyalgia pain and symptoms with a heavy focus on fatigue. (Dkt. #18-1 at 24-25 and 31-33.)

The Commissioner responds by noting that the ALJ found plaintiff's fibromyalgia to be a severe medical impairment and assessed appropriate limitations for the condition in forming the RFC in this case.

"SSR 12-2p provides guidance on how the Commissioner evaluates fibromyalgia in disability claims." Christine M. R. v. Saul, No. 3:19CV01752(SALM), 2021 WL 129415, at *18 (D. Conn. Jan. 14, 2021)(citing SSR 12-2P, 2012 WL 3104869). SSR 12-2p also provides guidance on how fibromyalgia will fit into the five-step evaluation process and how a claimant's complaints will be evaluated. SSR 12-2p, 2012 WL 3104869 at *5-*6. Importantly, SSR 12-2p provides, "[h]ow do we evaluate a person's statements about his or her symptoms and functional limitations? We follow the two-step process set forth in our regulations and in SSR 96-7p." Id. "First step of the symptom

evaluation process.  There must be medical signs and findings
that show the person has [a medically determinable impairment]
which could reasonably be expected to produce the pain or other
symptoms alleged." Id.  At step two, the ALJ will

> then evaluate the intensity and persistence of the
> person's pain or any other symptoms and determine the
> extent to which the symptoms limit the person's capacity
> for work. If objective medical evidence does not
> substantiate the person's statements about the
> intensity, persistence, and functionally limiting
> effects of symptoms, [the ALJ] consider[s] all of the
> evidence in the case record, including the person's
> daily activities, medications or other treatments the
> person uses, or has used, to alleviate symptoms; the
> nature and frequency of the person's attempts to obtain
> medical treatment for symptoms; and statements by other
> people about the person's symptoms. . . . [W]e will make
> a finding about the credibility of the person's
> statements regarding the effects of his or her symptoms
> on functioning.

Id.

As indicated, plaintiff first raises arguments related to
the criteria outlined by SSR 12-2p and the different ways that
fibromyalgia can be established by a claimant.  Plaintiff cites
medical records outlining some of the symptoms and then asserts
that this case is analogous to Walbush v. Comm'r of Soc. Sec.,
No. 8:23-CV-881-DNF, 2024 WL 3084337 (M.D. Fla. June 21, 2024.)
In her brief, plaintiff argues that as in Walbush, the ALJ did
not mention 12-2p and did not "consider the second set of
criteria in SSR 12-2p to determine whether fibromyalgia is a

medically determinable impairment." (Dkt. #18-1 at 26 (citing
Walbush, 2024 WL 3084337 at *5).)

However, unlike the matter in Walbush, the ALJ in this case
found that plaintiff's fibromyalgia was a medically determinable
impairment.  Further, it was found to be a severe impairment.
(R. 1437.)  Mentioning SSR 12-2p or the criteria used by the ALJ
to make this determination does not appear to be required and
none of the cases cited by plaintiff stand for that proposition.
Indeed, the court in Walbush noted that even if an ALJ erred in
finding that a case of fibromyalgia was not a severe medically
determinable impairment, that error could be harmless as long as
an ALJ considered limitations from all conditions at the RFC
stage. Walbush, 2024 WL 3084337 at *5.  In this case, not only
did the ALJ find the fibromyalgia to be severe but explicitly
discussed the condition and its impact on the RFC that was
formed.  (R. 1440-1443.)

Plaintiff also alleges error in the formation of the RFC to
the extent that she argues that the ALJ rejected her claims of
"pain and limitation because of a lack of objective evidence."
(Dkt. #18-1 at 32.) Plaintiff asserts that the ALJ applied an
incorrect legal standard in the RFC analysis as requiring
objective evidence. In support of this argument, plaintiff cites
a lengthy section of the ALJ's decision which highlights that
the ALJ found plaintiff's complaints to be "inconsistent because

they are not fully supported by the objective medical evidence
and because her level of care, response to treatment, and
activities of daily living are consistent with greater work
ability." (Dkt. 18-1 at 32 (citing R. 1443).)

"In fibromyalgia cases, if the objective medical evidence
is inconsistent with plaintiff's testimony regarding her
functional limitations, the ALJ will 'consider all of the
evidence in the case record[.]'" Christine M. R. v. Saul, No.
3:19CV01752(SALM), 2021 WL 129415, at *18 (D.Conn. Jan. 14,
2021)(citing SSR 12-2p 2012 WL 3104869 at *5).  Plaintiff relies
in part on Lim v. Colvin, 243 F. Supp. 3d 307, 316 (E.D.N.Y.
2017) and its analysis of Green-Younger v. Barnhart, 335 F.3d
99, 108 (2d Cir. 2003).  The Court notes that there are some
factual similarities between the medical histories of the
plaintiffs in these cases, but the cases are not directly on
point.  In Lim, the issue centered around the ALJ's overreliance
on the testimony of a medical expert during the hearing, instead
of plaintiff's treating physicians' diagnosis of fibromyalgia,
even after the medical expert said that his opinion was based on
only objective evidence and he could not opine on subjective
complaints of pain.  Lim, 243 F. Supp. 3d at 315-16.  The Court
in Lim further explained that the Second Circuit Court of
Appeals had dealt with a similar issue in another case and had
found that an ALJ committed error and applied the "incorrect

legal standard" by finding that there was no objective evidence to support the complaints. Id. at 315-16 (citing and relying upon Green-Younger v. Barnhart, 335 F.3d 99, 108 (2d Cir. 2003)). Unlike the case at bar, the claimant in Lim was not found to have a severe impairment of fibromyalgia. Lim, 243 F.Supp.3d. at 312. Also,

> the 2003 decision in Green-Younger predates SSR 12-2p, which was issued in 2012. Indeed, SSR 12-2p appears to respond to, and address, the concerns raised by the Court in Green-Younger about the inherent difficulties that arise when evaluating fibromyalgia. SSR 12-2p acknowledges that fibromyalgia patients' subjective complaints may be unsubstantiated by the objective medical evidence. In such cases, the ALJ is instructed to look beyond the objective medical evidence and consider all of the evidence in the case record.

Christine M. R. v. Saul, No. 3:19CV01752(SALM), 2021 WL 129415, at *19 (D. Conn. Jan. 14, 2021)(internal citations and quotations omitted).

Notably, in reviewing the decision of the ALJ in this case, it appears that the ALJ considered evidence beyond just objective medical evidence of record, precisely as the case law and regulations would dictate. In discussing the RFC, the ALJ noted the complaints and symptoms identified by the plaintiff; while also noting plaintiff "cared for her baby daughter during the day. She fed the dogs, prepared simple lunches and complete dinners, did light housework including washing dishes, during mopping, vacuuming, and laundry with help from her husband." (R.

1440. (citing Exhibits 1E and 6E.))  The ALJ further noted that
the plaintiff shops for groceries and identified hobbies like
watching TV, swimming, and playing outside with her child and
pets.  (R. 1440.)

The ALJ continued by discussing various medical complaints
and testing that the plaintiff had undergone as well as some of
the medication plaintiff has taken. (R. 1441.)  The ALJ's
decision also mentioned physical therapy and home exercise for
mild pain, prior to the alleged onset date. (R. 1441.)  The ALJ
further noted treatment with Rheumatologist Hulinska and her
impression that "symptoms were mechanical and related to her
known lumbrosacral disc disease and recent pregnancy." (R.
1441.) It was noted that pain management and physical therapy
were declined at the time. (R. 1441.)  The ALJ additionally
noted that plaintiff identified a 30-40% reduction in pain with
a new medication regiment in January of 2022. (R. 1441
referencing R. 1966.)

Notably, the ALJ sums up his review of the record by
mentioning that "claimant's statements about the intensity,
persistence, and limiting effects of her symptoms, they are
inconsistent because they are not fully supported by the
objective medical evidence and because her level of care,
response to treatment, and activities of daily living are
consistent with greater work ability." (R. 1443.)  While this is

the language that the plaintiff cites to argue that the ALJ incorrectly required objective evidence, the Court disagrees. The ALJ specifically noted that

> The claimant benefited from a regimen prescribed by pain management but discontinued her medications while pregnant and breastfeeding, with an increase in symptoms. Physical examinations were significant for positive tender points and decreased range of motion of cervical and lumbar spine. There was proximal (core) weakness contributing to poor stabilization. After the date last insured, she underwent a physical therapy intake and was assessed as a good candidate with a good prognosis.

(R. 1443.)  The Court reads this portion of the ALJ's opinion to incorporate his previous statements about the plaintiff's activities of daily life and to note the somewhat conservative treatment and medication regimen that was identified.  The ALJ noted that for these reasons, and in light of the plaintiff's

> fibromyalgia and degenerative disc disease of the lumbar spine [plaintiff is reasonably] limit[ed] to the lifting and carrying standing and walking of light work with no climbing of ladders, ropes, or scaffolds, no exposure to workplace hazards, occasional climbing of ramps and stairs, stooping, kneeling, crouching, and crawling, and frequent balancing and frequent fingering and handling.

(R. 1443.) The ALJ concluded this section with a discussion of the medical opinions in the record and his assignment of persuasiveness to them.  (R. 1444-45.)  The Court need not address the opinions of the state agency medical consultants or Dr. Wong any further, it is simply enough to note that those opinions are sufficient.  The only further discussion of any

doctor's opinion that is relevant to plaintiff's fibromyalgia is that of Dr. Carnaru, who opined after the DLI that plaintiff had a good prognosis, and noted plaintiff's fibromyalgia symptoms and tender points, but declined or neglected to provide any function-by-function analysis over the final four pages of the form. (R. 2259-66.)

Upon review of the ALJ's opinion and the record, the Court is satisfied that the ALJ based his RFC determination on the entirety of the record and not solely on objective medical evidence as plaintiff contends.  Further, the RFC determination is supported by substantial evidence.

**CONCLUSION**

Based on the foregoing, plaintiff's motion for an order reversing or remanding the Commissioner's decision (Dkt. 18) is DENIED and the Commissioner's motion to affirm that decision (Dkt. 23) is GRANTED.

It is so ordered this 25th day of September 2025, at Hartford, Connecticut.

_____ /s/ _____

Robert A. Richardson
United States Magistrate Judge